# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Deborah Vruno, | **Case No. 0:20-cv-00964** |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Halsted Financial Services, Inc. | |
| Defendant. | **JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This action arises out of Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") as well as the invasions of Plaintiffs' personal privacy by Defendant and its agents in their illegal efforts to collect a consumer debt.

## JURISDICTION

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 for federal claims, 28 U.S.C. § 1367 for supplemental state law claims, and pursuant to 15 U.S.C. § 1692k(d).

3. Venue is proper in this District because the acts and transactions occurred here, and Defendant and transacts business here.

4. Defendant has transacted business within the State of Minnesota by

attempting to collect a debt from Plaintiff via the mails and telephone system located in Minnesota, as well as registering itself as a licensed debt collector and as a corporation here.

## PARTIES

5.   Plaintiff Deborah Vruno (hereinafter "Plaintiff") is a natural person who resides in the City of Saint Paul, County of Ramsey, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) or a person affected by a violation of that law.

6.   Plaintiff has suffered an injury in fact that is traceable to Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

7.   Defendant Halsted Financial Services, Inc. (hereinafter "Defendant") is a collection agency and Illinois corporation operating from a principal office address of 8001 N. Lincoln Ave., Suite 500, Skokie, IL 60077–3007, with a registered office address of Corporation Service Company, 2345 Rice Street, Suite 230, Roseville, MN 55113, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

8.   Within one year immediately preceding the filing of this complaint, Defendant attempted to collect from Plaintiff a financial obligation that was

primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), by attempting to collect this debt from Plaintiff in the State of Minnesota.

9.   Sometime before 2018, Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes, namely, a consumer debt in the approximate amount of $2,447.13 arising out of an alleged debt to Credit One Bank, N.A., that was for Plaintiff's personal, family and household purposes ("debt").

10.   Plaintiff disputes this alleged debt, the final bill on this account, and any remaining balance, and is represented by the undersigned counsel both with respect to this debt and to the claims made herein.

11.   Despite Defendant having been previously warned not to call Plaintiff regarding this disputed debt, in the period one-year immediately preceding the filing of this lawsuit, Defendant called Plaintiff on her cellular telephone number on numerous occasions and over her repeated objections.

*Illegal Automated Calls to Plaintiff's Cellular Telephone*

12.   Plaintiff received a series of harassing automated calls on her cellular telephone from Defendant in violation of the FDCPA and TCPA, as well as Minnesota law.

13.   These calls from Defendant to Plaintiff were automated because each call

involved clicks, pauses, silence, unanswered hang-ups and spoofed caller ID which was randomized and localized to appear to show that the calls originated from local Minneapolis telephone numbers despite the fact that they originated from Skokie, Illinois.

14.    On January 6, 2020, at approximately 9:59 a.m., using Caller ID No. 612-351-4055, Plaintiff received a call from Defendant on her cellular telephone from an automated telephone dialing system.  No live person ever came on the line and after the telephone clicked a few times the Defendant's system then hung up on Plaintiff.

15.    On January 6, 2020, at approximately 11:34 a.m., using Caller ID No. 612-351-3992, Plaintiff received another automated call from Defendant.

16.    On January 7, 2020, at approximately 11:30 a.m., using Caller ID No. 612-324-0079, Plaintiff received another automated call from Defendant.

17.    On January 7, 2020, at approximately 12:42 p.m., using Caller ID No. 612-324-1249, Plaintiff received another automated call from Defendant.

18.    On January 8, 2020, at approximately 9:28 a.m., using Caller ID No. 612-324-0079, Plaintiff received another automated call from Defendant.

19.    On January 8, 2020, at approximately 10:30 a.m., using Caller ID No. 612-324-0079, Plaintiff received another automated call from Defendant.

20.    On January 9, 2020, at approximately 10:25 a.m., using Caller ID No. 612-

351-3992, Plaintiff received another automated call from Defendant.

21.  On January 10, 2020, at approximately 11:07 a.m., using Caller ID No. 612-324-0079, Plaintiff received another automated call from Defendant.

22.  On January 10, 2020, at approximately 11:28 a.m., using Caller ID No. 612-351-4055, Plaintiff received another automated call from Defendant.

23.  On January 11, 2020, at approximately 8:53 a.m., using Caller ID No. 651-351-4089, Plaintiff received a call from Defendant on her cellular telephone from an automated telephone dialing system.  No live person ever came on the line and after the telephone clicked a few times the Defendant's system then hung up on Plaintiff.

24.  On January 11, 2020, at approximately 2:51 p.m., using Caller ID No. 612-351-3992, Plaintiff received another automated call from Defendant.

25.  On January 13, 2020, at approximately 10:49 a.m., using Caller ID No. 612-324-0079, Plaintiff received a call from Defendant on her cellular telephone from an automated telephone dialing system.  No live person ever came on the line and after the telephone clicked a few times the Defendant's system then hung up on Plaintiff.

26.  On January 13, 2020, at approximately 11:29 a.m., using Caller ID No. 612-324-1249, Plaintiff received a call from Defendant on her cellular telephone from an automated telephone dialing system.  No live person ever came on

the line and after the telephone clicked a few times the Defendant's system then hung up on Plaintiff.

27. On January 13, 2020, at approximately 4:01 p.m., using Caller ID No. 612-351-4055, Plaintiff received another automated call from Defendant.

28. On January 14, 2020, at approximately 8:43 a.m., using Caller ID No. 612-351-4089, Plaintiff received a call from Defendant on her cellular telephone from an automated telephone dialing system. No live person ever came on the line and after the telephone clicked a few times the Defendant's system then hung up on Plaintiff.

### *Collection Call on January 6, 2020*

29. After Defendant began collecting this alleged debt, Plaintiff told Defendant's collectors to stop calling her cellular telephone, but it refused.

30. Specifically, on or about 11:24 a.m. on January 6, 2020, Plaintiff received a call from Defendant who used the localized caller ID information showing phone number 612-351-4089.

31. Plaintiff spoke with a debt collector employed by Defendant who asked Plaintiff for payment in full or a payment arrangement on this debt.

32. Plaintiff explained that she had just lost her job of 29-years and was very upset.

33. Plaintiff was in tears about her job loss and was not even receiving

unemployment compensation yet, and had absolutely no income coming in.

34.   Plaintiff explained that as soon as she got a new job shoe would call Defendant back immediately and make payment arrangements, and thereafter the call ended.

35.   Plaintiff was extremely upset by the receipt of this collection call from Defendant because she had already repeatedly explained her financial situation to Defendant.

### Collection Call on January 7, 2020

36.   On January 7, 2020, at approximately 12:45 p.m., Plaintiff returned a 612-324-1249 call from Defendant that she had missed on her cellular telephone.

37.   Plaintiff spoke to Defendant's collection employee and told them again that she was out of work and had no income and would be calling them to make arrangements as soon as she was re-employed.  Thereafter, the call ended.

38.   Plaintiff was extremely upset by the receipt of this collection call from Defendant because she had already repeatedly explained her financial situation to Defendant.

### Collection Call on January 9, 2020

39.   On January 9, 2020, at approximately 11:33 a.m., Plaintiff received a call from Defendant's phone number 612-324-0079.

40.   Plaintiff spoke to Defendant's collection agent and again told them the same

information, namely, that she was out of a job and very emotionally upset as a result of the collection calls.

41.   Plaintiff reiterated that she had no income yet but would call back when she was re-employed to make payment arrangements.

42.   Plaintiff specifically asked that Defendant stop calling her cell phone, assuring them that she would eventually call them back and give updates on my financial situation once she was working again.

43.   Defendant's collection agent stated that since Plaintiff had not taken care of this debt, that Defendant was going to continue to call her.  Thereafter the call ended.

44.   Plaintiff was extremely upset by the receipt of this collection call from Defendant because she had already repeatedly explained her financial situation and demanded that Defendant stop calling her cellular telephone.

### Collection Call on January 10, 2020

45.   On January 10, 2020, at approximately 12:07 p.m., Plaintiff returned a call that she had received from Defendant's phone number 612-351-4055.

46.   Plaintiff spoke to one of Defendant's collection agents and again told them the same information, namely, that she was out of work and very upset of her situation and the continued collection calls.

47.   Plaintiff again explained that she had lost her job of 29 years and that she

had no income yet and would call back to make payment arrangements once she returned to work.

48.   Plaintiff again specifically asked Defendant for a second time to stop calling her cellular telephone, but was again told by the collector that because she had not agreed to make payments or other arrangements to pay this debt, that the calls would not stop.  Thereafter the collection call ended.

49.   Plaintiff was extremely upset by the receipt of this collection call from Defendant because she had already repeatedly explained her financial situation and demanded that Defendant stop calling her cellular telephone.

### *Collection Call on January 11, 2020*

50.   On January 11, 2020, at approximately 3:25 p.m., Plaintiff returned a call that she had received from Defendant's phone number 612-351-3992.

51.   Plaintiff spoke to one of Defendant's collection agents and again told them the same information, namely, that she was out of work and very upset of her situation and the continued collection calls.

52.   Plaintiff again explained that she had lost her job and that she had no income yet and would call back to make payment arrangements once she returned to work. Thereafter the collection call ended.

53.   Plaintiff was extremely upset by the receipt of this collection call from Defendant because she had already repeatedly explained her financial

situation and demanded that Defendant stop calling her cellular telephone.

### *Collection Call on January 14, 2020*

54. On January 14, 2020, at approximately 8:53 a.m., Plaintiff received a call from Defendant's phone number 651-351-3992.

55. Plaintiff spoke to Defendant's collection agent and again told them the same information, namely, that she was out of a job and very emotionally upset as a result of the collection calls.

56. Plaintiff again explained that she had lost her job and that she had no income yet and would call back to make payment arrangements once she returned to work.  Thereafter the collection call ended.

57. Plaintiff was extremely upset by the receipt of this collection call from Defendant because she had already repeatedly explained her financial situation and demanded that Defendant stop calling her cellular telephone.

### *First Collection Call on January 15, 2020*

58. On January 15, 2020, at approximately 11:36 a.m., Plaintiff received a call from Defendant's phone number 612-324-0079.

59. Plaintiff spoke to Defendant's debt collector and asked them not to keep calling, explaining that she had no income but again promising that she would call Defendant back as soon as she returned to work to make arrangements to pay.  Thereafter, the collection call ended.

60.   Plaintiff was extremely upset by the receipt of this collection call from Defendant because she had already repeatedly explained her financial situation and demanded that Defendant stop calling her cellular telephone.

### Second Collection Call on January 15, 2020

61.   On January 15, 2020, at approximately 1:22 p.m., Plaintiff received a call from Defendant's phone number 612-324-1249.

62.   Plaintiff spoke to Defendant's debt collector and asked them not to keep calling, explaining that she had no income but again promising that she would call Defendant back as soon as she returned to work to make arrangements to pay.  Thereafter, the collection call ended.

63.   Plaintiff was extremely upset and emotional by the receipt of this collection call from Defendant because she had already repeatedly explained her financial situation and demanded that Defendant stop calling her cellular telephone.

### Summary of Illegal Collection Conduct Under the FDCPA

64.   Thereafter, Plaintiff has been afraid to answer her cellular telephone because she is never certain who might be calling her.

65.   Plaintiff was in an extremely fragile state and has suffered substantial emotional distress and embarrassment by repeatedly having to say that she had lost her job and had no income.

66.     Plaintiff was made to feel humiliated and ashamed by Defendant at having to repeat her financial circumstances day after day, and felt that she was being harassed and punished as a result of her unemployment for the first time in over 30 years.

67.     All of the foregoing actions by Defendant were done in violation of numerous and multiple provisions of the FDCPA including, but not limited to 15 U.S.C. §§ 1692c(a)(1), 1692c(a)(3), 1692d, 1692d(5), 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, and 1692f(1), amongst others.

*Telephone Consumer Protection Act Violations*

68.     At all times relevant to this complaint, Plaintiff was and is a "person" as defined by the TCPA 47 U.S.C. § 153(39) and a subscriber to cellular telephone services within the United States.

69.     At all times relevant to this complaint, the Defendant has used, controlled, and/or operated "automatic telephone dialing systems" as defined by the TCPA 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(1) ("ATDS").

70.     The Federal Communications Commission (FCC) was given the authority to issue orders implementing the TCPA. The FCC has issued an order that states:

> The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications. Should a question arise as to whether express consent was

-12-

provided, the burden will be on the creditor to show it obtained the necessary prior express consent. Similarly, a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call. *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 565 (F.C.C. 2007), paragraph 10. (Footnotes omitted)

### Defendant's Illegal Robo-Calls to Plaintiff Cellular Telephone

71.   In the period within four years of filing this complaint, Defendant began robo-calling Plaintiff's cellular telephone number using an ATDS without her prior express consent.

72.   Defendant started calling and continued to call Plaintiff's cellular telephone using an ATDS in an attempt to collect a debt owed to the original creditor.

73.   At no point did Plaintiff give consent of any kind to Defendant to contact her on her cellular telephone number, or to robo-call her cellular telephone number using an ATDS.

74.   Within four years immediately preceding the filing of this lawsuit, Defendant and its agents telephoned Plaintiff's cellular telephone using an ATDS on numerous occasions in violation of the TCPA.

75.   Without Plaintiff's prior express consent, Defendant and its collectors and agents repeatedly used an ATDS to call Plaintiff's cellular telephone in an attempt to collect this debt at least 23 or more times.

76.   All of Defendant's robocalls using an ATDS, and the automated and/prerecorded messages, delivered to Plaintiff's cellular telephone were sent in *willful* violation of the TCPA because Defendant never obtained Plaintiff's prior express consent for such robocalls and messages, and had no basis to believe that they had Plaintiff's prior express consent.

77.   Plaintiff did not have any business whatsoever with Defendant.

78.   Plaintiff has never had an account with Defendant, other than this collection account.

79.   Plaintiff has never given out her cellular telephone number to Defendant or its collectors.

80.   Defendant's repeated robocalls to Plaintiff's cellular telephone, within the last four years prior to filing this complaint, were illegal third-party attempts to collect this debt in violation of the TCPA, 47 U.S.C. § 227 *et seq*.

### *Invasions of Privacy Violations*

81.   In the one year immediately preceding the filing of this lawsuit defendant engaged in repeated collection conduct that was both and invasion of privacy under Minnesota law, as well as a violation of the FDCPA.

82.   Between approximately January 6, 2020, and January 15, 2020, without right or legal authorization, on at least  24 or more occasions, Defendant robocalled Plaintiff's cellular phone, sometimes multiple times per day.

83. During several of these robocalls, Plaintiff told Defendant's collection employee that she could not pay this debt at that time and to stop calling her cellular telephone.

84. Defendant ignored Plaintiff's repeated requests to stop calling her cellular telephone.

85. Plaintiff has suffered actual damages as a result of Defendant's illegal conduct in the form of anxiety, emotional distress, fear, frustration, harassment, stress and upset, amongst other negative emotions as well as suffering from unjustified and abusive invasions of privacy.

### *Respondeat Superior Liability*

86. The acts and omissions of the debt collectors employed as agents by Defendant were committed within the time and space limits of their agency relationship with their principal, the Defendant.

87. The acts and omissions by these individuals and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant in collecting consumer debts.

88. By committing these acts and omissions against Plaintiff, these individuals and these other debt collectors were motivated to benefit their principal, the Defendant.

89.  Defendant is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by their collection employees, including but not limited to violations of the FDCPA and the TCPA.

*Summary*

90.  Plaintiff has suffered actual damages as a result of Defendant's illegal conduct in the form of anxiety, emotional distress, fear, frustration and upset, amongst other negative emotions as well as suffering from unjustified and abusive invasions of personal privacy at Plaintiffs' home and on her cellular telephone.

91.  The above-described collection conduct by Defendant in its efforts to collect this alleged debt from Plaintiff were oppressive, deceptive, misleading, unfair and illegal communications in an attempt to collect this alleged debt, all done in violation of numerous and multiple provisions of the FDCPA.

92.  These collection actions taken by Defendant, and the collection employees employed by Defendant, were made in violation of multiple provisions of the FDCPA, including but not limited to all of the provisions of the FDCPA cited herein.

93.  These violations by Defendant were knowing, willful, negligent and/or intentional, and Defendant did not maintain procedures reasonably adapted

to avoid any such violations.

94.     Defendant collection efforts with respect to this alleged debt from Plaintiff, which caused Plaintiff to suffer concrete and particularized harm because the FDCPA provides Plaintiff with the legally protected right to be treated fairly and truthfully with respect to any action for the collection of any consumer debt.

95.     Defendant's deceptive, misleading and unfair representations with respect to its collection effort were material misrepresentations that affected and frustrated Plaintiff's ability to intelligently respond to Defendant's collection efforts because Plaintiff could not adequately respond to the Defendant's demand for payment of this debt.

## **TRIAL BY JURY**

96.     Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.  US Const. amend. 7.  Fed. R. Civ. P. 38.

## **CAUSES OF ACTION**

## **COUNT I.**

## **VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

## **15 U.S.C. § 1692 *et seq.***

97.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

98.   The foregoing acts and omissions of Defendant and its agents constitute numerous and multiple violations of the FDCPA including but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 *et seq*., with respect to Plaintiff.

99.   As a result of Defendant's violations of the FDCPA, each Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. §1692k(a)(3), from Defendant .

## COUNT II.

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

## 47 U.S.C. § 227 *et seq.*

100.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

101.  Within the four-year period immediately preceding this action, Defendant made numerous calls to Plaintiff's cellular telephone service using an automatic telephone dialing system in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), and 47 C.F.R. 64.1200 (a)(1)(iii).

102.  The acts and or omissions of Defendant at all times material and relevant hereto, as described in this complaint, were done unfairly, unlawfully,

intentionally, deceptively and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

103. As a causally-direct and legally proximate result of the above violations of the TCPA and the C.F.R., Defendant, at all times material and relevant hereto, as described in this Complaint, caused Plaintiff to sustain damages.

104. Defendant did not have the necessary prior express consent of Plaintiff to use an automatic telephone dialing system to call the Plaintiff's cellular telephone.

105. Under the 47 U.S.C. § 227(b)(3)(B), Defendant is liable to Plaintiff for statutory damages under the TCPA of $500.00 per telephone call made to Plaintiff.

106. Defendant willfully and knowingly violated the TCPA, and as such Plaintiff is entitled to $1,500.00 per telephone call made to the Plaintiff pursuant to the 47 U.S.C. § 227(b)(3).

107. Plaintiff is entitled to injunctive relief prohibiting Defendant from contacting the Plaintiff on her cellular telephone using an automated dialing system pursuant to the 47 U.S.C. § 227(b)(3)(a).

## COUNT III.

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

108. Plaintiff incorporates by reference all of the above paragraphs of this

Complaint as though fully stated herein.

109.  Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**
> 15 U.S.C. § 1692(a) (emphasis added).

110.  Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors albeit without a private right of action, when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.
> 15 U.S.C. § 6801(a) (emphasis added).

111.  Defendant and/or its agents intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and/or private concerns or affairs of Plaintiff by unlawfully attempting to collect a debt and by repeatedly robo-calling Plaintiff at home on her cellular telephone after being told to stop, and thereby invaded Plaintiff's privacy.

112.   Defendant and their agents intentionally and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

113.   Plaintiff had a reasonable expectation of privacy in her solitude, seclusion, private concerns or affairs.

114.   The conduct of Defendant and its agents, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in intrusions and invasions of privacy that occurred in a way that would be highly offensive to a reasonable person in that position.

115.   As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual and punitive damages from Defendant in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant as follows:

## **COUNT I.**

## **VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

## **15 U.S.C. § 1692 *et seq.***

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1)

against Defendant and for Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) against Defendant and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Defendant and for Plaintiff;

## COUNT II.

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

## 47 U.S.C. § 227 *et seq.*

- for an award of statutory damages of $500.00 per call pursuant to 47 U.S.C. § 227(b)(3)(B) against Defendant and for Plaintiff;

- for an award of treble damages of $1,500.00 per call pursuant to 47 U.S.C. § 227(b)(3) against Defendant and for Plaintiff;

- for an injunction prohibiting Defendant from contacting Plaintiff on Plaintiff's cellular telephone using an automated dialing system pursuant to the 47 U.S.C. § 227(b)(3)(a).

## COUNT III.

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

- for an award of actual damages from Defendant for the emotional distress suffered as a result of the intentional and/or negligent

invasions of privacy in an amount to be determined at trial and for Plaintiffs; and

- such other and further relief as the Court deems just and equitable.

Respectfully submitted,

**THE BARRY LAW OFFICE, LTD**

Dated: April 14, 2020

By: <u>s/ Peter F. Barry</u>
Peter F. Barry, Esq.
Attorney I.D.#0391787
2828 University Ave. SE, Suite 202
Minneapolis, Minnesota 55414-4127
Telephone: (612) 379-8800
pbarry@lawpoint.com

*Attorney for Plaintiff*

## **VERIFICATION OF COMPLAINT AND CERTIFICATION**

STATE OF MINNESOTA           )
                             ) ss
COUNTY OF HENNEPIN           )

Pursuant to 28 U.S.C. § 1746, Plaintiff Deborah Vruno verifies, certifies, and declares as follows:

1.    I am a Plaintiff in this civil proceeding.
2.    I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3.    I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4.    I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5.    I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6.    Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7.    Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 14, 2020

Deborah Vruno (Apr 14, 2020)
_____
Signature

-24-

# Complaint

**Final Audit Report**                                                    2020-04-14

| | |
|---|---|
| Created: | 2020-04-14 |
| By: | Peter Barry (pbarry@lawpoint.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAzbkpAkhuk_da3ETZtRgWCIe9x7w0y-YA |

## "Complaint" History

Document created by Peter Barry (pbarry@lawpoint.com)
2020-04-14 - 6:18:20 PM GMT- IP address: 69.180.166.117

Document emailed to Deborah Vruno (dvruno@comcast.net) for signature
2020-04-14 - 6:18:53 PM GMT

Email viewed by Deborah Vruno (dvruno@comcast.net)
2020-04-14 - 9:33:03 PM GMT- IP address: 73.65.65.148

Document e-signed by Deborah Vruno (dvruno@comcast.net)
Signature Date: 2020-04-14 - 9:34:34 PM GMT - Time Source: server- IP address: 73.65.65.148

Signed document emailed to Peter Barry (pbarry@lawpoint.com) and Deborah Vruno (dvruno@comcast.net)
2020-04-14 - 9:34:34 PM GMT

Adobe Sign